UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>   Plaintiff<br><br>v.<br><br>Kenneth Earl Smith, Jr.,<br><br>   Defendant | Case No. 2:21-cr-00279-CDS-EJY<br><br>**Order Granting Defendant's Motion for Compassionate Release, Denying Defendant's Motion to Not Consider the Government's Late Response, and Sealing Multiple Filings**<br><br>[ECF Nos. 99, 107] |

  Defendant Kenneth Smith, Jr. moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), claiming that the critical and deteriorating condition of his child's sole caregiver constitutes an extraordinary and compelling reasons for release. Mot. for compassionate release, ECF 99. The government, filing its response late and without explanation for its tardiness, opposed the motion. ECF No. 104. The government also filed a supplement. ECF No. 106. Smith filed a reply (ECF No. 105) and a supplement (ECF No. 108). Smith also asks that the government's untimely response to his motion not be considered. ECF No. 107. Because I find that Smith's reason is extraordinary and compelling, I grant the motion for compassionate release. However, Smith's motion against considering the government's late response is denied. I also order, sua sponte, the sealing of the filings at ECF No. 99, ECF No. 105, and ECF No. 108[1]

I. Background

  Smith is currently detained at Federal Correctional Institution Jesup. ECF No. 106 at 8. On June 12, 2023, Smith pled guilty to eight counts of illegal acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6), 18 U.S.C. § 924(a)(2); and one count of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A), 18 U.S.C. § 923(a) and 18 U.S.C. § 924(a)(1)(D). ECF No. 83. Smith was sentenced to sixty-three months of imprisonment, to be followed by three years of

---

[1] The court has the authority to sua sponte seal motions for good cause. *See* Fed. R. Civ. P. 5.2(e).

supervised release. ECF No. 94 at 2–3. Now Smith seeks compassionate release arguing that the court should reduce his sentence based on the health and safety of his minor child, given the deteriorating condition of his child's sole caregiver. ECF No. 99 at 2. He further argues that his lack of criminal history, non-violent conduct, and rehabilitation efforts while incarcerated support a finding that a sentence reduction is appropriate. *Id.*; *see* 18 U.S.C. § 3553(a) (detailing the factors courts should consider in imposing a sentence).

Under Second Amended General Order 2020-06, the Federal Public Defender of Nevada (FPD) was appointed to represent Smith for the purpose of assessing the motion for compassionate release. Order, ECF No. 102. The general order requires the FPD to either file a supplement to the defendant's pro se motion or, if a defendant's motion needs no supplementation, a notice of non-supplementation. *Id.* The United States Attorney's Office must then file a response to the pro se motion within fourteen days of the FPD filing a supplement or notice of non-supplementation. *Id.*

The FPD provided notice of non-supplementation on May 24, 2024 (ECF No. 101), making the government's response due by June 7, 2024. By June 12, 2024, a response had not been filed. The government was therefore ordered to respond by June 14, 2024. Min. order, ECF No. 103. The government filed its opposition (ECF No. 104) on June 12 and a supplemental response by the June 14 deadline (ECF No. 106). The government opposes Smith's motion arguing that extraordinary and compelling reasons for sentence reduction are not present here. ECF No. 104 at 4–8. It also contends that consideration of Smith's § 3553(a) factors weigh against sentence reduction. *Id.* at 8–9. However, Smith requests that the court not consider the government's response because it was untimely, and the government did not demonstrate excusable neglect. ECF No. 107. The government did not file a response to Smith's motion. Smith also filed a supplement to his reply regarding the motion for compassionate release in which he attached an email from the Department of Veterans Affairs (VA). ECF No. 108.

II.      **Legal standard**

Under 18 U.S.C. § 3582(c), a district court may, upon motion of the defendant, and in certain circumstances, reduce a term of imprisonment. 18 U.S.C. § 3582(c)(1)(A). Before filing such a motion, the defendant must first petition the Bureau of Prisons ("BOP") for compassionate release. *Id.* The defendant may move for compassionate release only "after the defendant has fully exhausted all administrative rights to appeal" within [BOP] or after thirty days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

When addressing the merits of a motion for compassionate release, a district court must consider three factors: (1) whether extraordinary and compelling reasons warrant a sentence reduction, (2) whether a reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the court must consider and weigh the factors set forth in § 3553(a) to decide whether the requested sentence reduction is warranted under the particular circumstances of the case. *United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022) (quotation marks and citation omitted). Ultimately, the decision to grant or deny compassionate release is within the district court's discretion, but the defendant bears the burden of establishing his eligibility for compassionate release. *Wright*, 46 F.4th at 951.

Under the most recent U.S. Sentencing Guidelines amendment, the following list of circumstances qualify as an "extraordinary and compelling reason" to warrant early release: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant was a victim of abuse while serving his term of imprisonment; (5) "other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described above warrant compassionate release"; and (6) "a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive)" if certain other conditions are met. U.S. Sent'g Guidelines Manual § 1B1.13(b) (U.S. Sent'g Comm'n 2023).

III.     Discussion

   A.  The government's untimely response

Although the government's response wase untimely and that untimeliness may sometimes constitute excusable neglect, the government's particular brand of untimeliness uniquely had no bearing on the outcome of this motion. However, the government's failure to explain its tardiness in its response, and its subsequent failure to respond to Smith's motion seeking to prevent consideration of the government's response is inappropriate and suggests to the court a lack of interest in the outcome of the motion. The government is cautioned that future conduct of this sort may result in a finding that there was no excusable neglect, and the court may disregard any untimely responses.

   B.  Administrative exhaustion

As a threshold matter, I must determine whether Smith has satisfied the administrative exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A). A district court may consider a motion for compassionate release brought by an inmate only if "the inmate has requested that the BOP make such a motion and either (a) the inmate has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the [inmate]'s behalf, or (b) 30 days have elapsed since the warden of the [inmate]'s facility received a compassionate-release request from the inmate." *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021) (quotation marks and citation omitted, alterations in original); *see also* 18 U.S.C. § 3582(c)(1)(A).

The government's supplement includes a copy of Smith's Request to Staff dated April 13, 2024, addressed to the warden of his facility, seeking compassionate release. ECF No. 106 at 4. It also includes the warden's response, which is dated May 15, 2024. Because May 15 is more than thirty days after April 13, Smith administratively exhausted his motion for compassionate release.

   C.  Compassionate release

As noted above, a district court may grant a reduction in sentence under § 3582(c)(1)(A) if it determines that (1) extraordinary and compelling reasons warrant a reduction; (2) a reduction

would be consistent with applicable policy statements issued by the Sentencing Commission; and (3) a reduction is warranted under the factors set forth in 18 U.S.C. § 3553(a). *See Wright*, 46 F.4th at 945; 18 U.S.C. § 3582(c)(1)(A). Congress did not provide a statutory definition of "extraordinary and compelling reasons," but rather left it to the Sentencing Commission to promulgate policy statements describing what should be considered extraordinary and compelling reasons for sentence reduction. *See United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021).

Section 1B1.13 of the U.S. Sentencing Guidelines provides that extraordinary and compelling reasons for a reduction in sentence exist under any of six enumerated circumstances, or a combination thereof, relating to: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) family circumstances of the defendant; (4) the defendant being a victim of abuse while in custody; (5) other reasons of similar gravity; and (6) an unusually long sentence. *See* U.S. Sent'g Guidelines § 1B1.13(b). The policy statement provides that the third category, family circumstances, may constitute extraordinary and compelling reasons to necessitate compassionate release for reasons including:

> (A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition."
>
> (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
>
> (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "*immediate family member*" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

*Id.* at § 1B1.13(b)(3) (emphasis in original).

Smith seeks compassionate release because he claims that his child's caregiver—Heather—is incapacitated. ECF No. 99 at 2. Specifically, he states that she "suffers from severe addiction and mental health issues" and that she has "a deteriorating mental state, marked by threats of self-harm and erratic behavior" which he says put his son, identified herein as Z, in danger. *Id.* He also states that Heather "violat[ed] the custody agreement by moving the child out of the state." *Id.* Smith attached a series of concerning text messages as an exhibit that appear to be sent between Heather and Smith's father. *Id.* at 4–7. He also attached two family court custody orders and a handwritten statement in which he states that "[t]he mother of my 6-year old son Z has become unfit to properly care for him due to drugs. My mom passed away and my father Kenneth Smith, Sr., has to work full time to maintain the household. My sister Kayla Smith is homeless in California with her child." *Id.* at 18–19, 25, 30. Smith states that he has no prior criminal history and has maintained a "non-violent record" while incarcerated, completing "over 60 educational courses and pursuing paralegal studies." *Id.* at 2.

In its late response, the government argues that Smith has not established that Heather is either dead or incapacitated in a manner that would justify his early release. ECF No. 104 at 5. It asserts that Smith's son and Heather's other child remain in Heather's custody and notes that the two custody orders conferred to Heather sole custody of Z and did not prohibit her from moving Z outside of California. *Id.* at 6. It further argues that even if Smith has established Heather's incapacity, he has not established that he is the only or best person to care for his son. *Id.* at 6–7.[2] The government asserts that Smith has provided no proof that he has played a significant role in the child's life. *Id.* at 7 (citing *United States v. Azama*, 2024 WL 81384, at *2 n.3 (D. Nev. Jan. 5, 2024) (that

---

[2] The government cites to several non-controlling cases on this point: (1) *United States v. Centeno-Morales*, 90 F.4th 274, 282 (4th Cir. 2024) (although his wife had died, defendant did not meet his burden to show that he was the only or best person to care for his minor child); (2) *United States v. Carr*, 2020 WL 1815910 (D. Colo. Apr. 10, 2020) (denied as care is available for the defendant's minor children); (3) *United States v. Alvarez-Barrera*, 2023 WL 2330779, at *4 (D.N.D. Mar. 2, 2023) ("The Defendant's request is to provide support for his 17-year old son who was in a tragic car accident in which the Defendant's grandchild and mother of that grandchild lost their lives. This tragic family circumstance does not warrant release when the inmate/defendant does not assert he was the only available caretaker for the minor child."); (4) *United States v. Crocker*, 2020 WL 7079132, at *3 (D. Or. Dec. 1, 2020) ("[W]hen a defendant has not shown that he or she is the only available caretaker, compassionate release is not warranted.").

the defendant has "not seen his now eight-year-old daughter since she was two months old . . . undercuts Defendant's contention he is an irreplaceable caregiver.")) Regarding the § 3553(a) factors, the government argues that Smith's firearm trafficking offenses posed a substantial danger to the community, his efforts at rehabilitation were not alone substantial enough to be a compelling reason, and, because he received a downward variance in his sentence,[3] the § 3553(a) factors weigh against Smith's early release. *Id.* at 8–9.

In his reply, Smith states that Z has no suitable alternative caretakers and details how the VA Vocational Rehabilitation and Employment program will assist him in supporting Z upon his release. ECF No. 105 at 5–9. In the supplement to his reply, Smith states that his father has not heard from Heather since April 16, 2024, and that Heather sought VA benefits for her homelessness. ECF No. 108 at 2. He also attaches an email from the VA that notes when Heather came in, an "intake social worker felt very concerned due to the visual status of two minor children in [Heather's] care." *Id.* at 4.

### 1. Smith does not have to prove that alternative caregivers are unavailable under U.S.S.G. § 1B1.13(b)(3)(A).

The government's late response discusses the fact that Smith has not demonstrated that there are no available, alternative caretakers for Z. ECF No. 104 at 6–7. Before addressing the more fact-intensive questions raised in the motion, I find it best to settle this issue. U.S.S.G. § 1B1.13(b)(3)(A) defines an "extraordinary and compelling" circumstance as the "death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition." It makes no requirement regarding an alternative caregiver. By contrast, all three of the other "extraordinary and compelling" family circumstances set forth in § 1B1.13(b)(3) require the defendant to establish that there is no alternative caregiver available. U.S. Sent'g Guidelines § 1B1.13(b)(3); *see also United States v. Cunningham*, 2024 WL 4057004, at *9 (D. Md. Sept. 4, 2024)

---

[3] A 63-month custodial sentence from an applicable custodial guideline range of 87 to 108 months.

("[T]he plain language of the current Guidelines does not require a defendant to demonstrate that there are no other available caregivers for a minor child."). Section 1B1.13(b)(3)(A) is not ambiguous. As the U.S. District Court for the District of Maryland explained in *Cunningham*, "[i]f the Sentencing Commission sought to limit section 1B1.13(b)(3)(A)'s applicability to circumstances where the defendant is the only available caregiver, it would have said so." 2024 WL 4057004, at *9. Like the judge in *Cunningham*, "I cannot import a requirement that the Sentencing Commission failed to include." *Id.* In cases where a child's caregiver has died, multiple courts have recognized that the defendant need not establish that he is the only available caregiver. *See United States v. Lanphear*, 2024 WL 97369, at *2 (D. Mont. Jan. 9, 2024) (stating that "because VanderRoest was the caregiver of [the defendant]'s minor child at the time of his death and there is no requirement that the defendant be the child's only available caregiver, VanderRoest's death qualifies as an extraordinary and compelling reason under § 1B1.13."); *United States v. Lou*, 2023 WL 2499878, at *2 (N.D. Ill. Mar. 14, 2023) ("That analysis ignores the express terms of the provision. It is the death or incapacitation of the caregiver that is extraordinary and compelling, not only the threat of foster care."); *United States v. Turner*, 2020 WL 5717096, at *4 (E.D. Wis. Sept. 24, 2020) ("I see no requirement in the guideline or the statute that defendant also demonstrate that he is the only available care-giver for his daughter.").[4] Therefore, whether Smith is the only or best available caretaker for Z is irrelevant to the present compassionate release inquiry.

---

[4] Some courts, including in the Ninth circuit, have seemingly imported the requirement that the defendant prove that an alternative caregiver is unavailable. *See, e.g.*, *United States v. Cleveland*, 2024 WL 1374067, at *4 (D. Mont. Apr. 1, 2024) ("The Guideline text contemplates a family circumstance so grave that it requires the defendant's early release because the defendant would be 'the only available caregiver' to his minor child[.]"); *United States v. Foster*, 2024 WL 3715442, at *2 (N.D. Ohio Aug. 8, 2024) ("Foster has not proven that he would be the only available caregiver for his son or that he would be considered by a court as a suitable caregiver."). However, I could find no example of a court reaching this conclusion after conducting a thorough textual analysis of the sentencing guidelines. *See United State v. Garcia-Lizarraga*, 2024 WL 1626330, at *2 (S.D. Cal. Apr. 15, 2024) (stating that "other courts have decided that the defendant must still show that the current caregiver is 'incapacitated,' and the defendant is the 'only caregiver' to care for his or her child" but citing only to cases that analyze incapacitation, not the only caregiver element). A textual analysis of the guidelines can only lead to the conclusion that in order to qualify for compassionate release under § 1B1.13(b)(3)(A), a defendant need not show that no available alternative caretakers exist for their child.

### 2. *Smith has produced sufficient evidence that Z's caretaker is incapacitated for purposes of U.S.S.G. § 1B1.13(b)(3)(A).*

The Bureau of Prisons ("BOP") defines incapacitation of the family caregiver as "a severe injury" or "a severe illness" "that renders the caregiver incapable of caring for the child." BOP Program Statement 5050.50 (January 17, 2019); *see also United States v. Williams*, 2024 WL 3172729, at *2 n.2 (S.D. Cal. June 25, 2024) (same). Courts have understood proof of incapacitation to require more than just a caretaker's being inconvenienced by the responsibility of childcare. *United States v. Al Hunaity*, 2024 WL 982044, at *5 (D.N.J. Mar. 7, 2024). Likewise, they have found that "[a] 'trying' medical condition such as diabetes or certain cancers, although serious, does not require a finding of incapacitation[,]" *id.*, and "[m]any individuals [with serious conditions] are able to go about their daily lives and are not incapacitated[,]" *United States v. Cruz-Rivera*, 2020 WL 5993352, at *7 (E.D. Pa. Oct. 9, 2020). The bar to show incapacitation is a high one, and some courts have found that where a caretaker, "although with some difficulty, is still able to clothe, feed, and shelter their children[,]" a defendant is not entitled to compassionate release under § 1B1.13(b)(3)(A). *United States v. Harris*, 2024 WL 3927938, at *3 (D. Minn. Aug. 23, 2024).

The evidence presented here strongly suggests that Heather is unable to adequately clothe, feed, or shelter Z. In his initial motion, Smith attaches screenshots from text messages that appear to be sent between Heather and Smith's father. ECF No. 99 at 4–7. In those messages, Heather states that she is "sleeping in a car with my 2 kids I need help[,]" admits to using meth and describes herself as an addict. *Id.* at 4. She mentions that it is too "cold to have [the children] sleep in the car with a missing window[.]" *Id.* at 5. In the texts, Heather says "this world is SOOO UGLY I WANNA TAKE ME & MY KIDS OUT OF IT. We don't deserve to go through this . . . Kenny[5] used to do everything[.]" *Id.* at 6. In the final message attached, Heather states:

> [T]his life im living is so fucked..i trieedd to be so strong for my babies im sick i need my pain pills skmetimes i cant move without them i wont lie to you i smoked meth again to stop the noise in my head i am a addict! i just want to drown out the noise & pain. I csnt do this life anymore i am all alone with no help or support! I do

---
[5] The court construes "Kenny" as the defendant, Kenneth.

want to to just lay down & die I could NEVER leave my kids in this world to suffer like I did! I meed them with me where ever I do[.]"

*Id.* at 7. These messages are extremely concerning but are not dated,[6] so it is unclear to what extent Heather remains in this condition.[7] Although alone these messages are likely not enough to demonstrate that Heather is incapacitated, Smith's supplement provides additional evidence of Z's current condition while under Heather's supervision. On June 6, 2024, a woman identifying herself as Heather sought assistance from the VA and, according to the VA's initial report, "[t]he intake social worker felt very concerned due to the visual status of two minor children in [Heather's] care." ECF No. 108 at 4. Further, according to Smith's presentence report, Z has a serious medical condition for which he "must see a specialist regularly" and requires recurring surgery. Presentence rep., ECF No. 86 at 18.

When weighing the combined evidence, it is clear that Heather is unable to provide even the most basic care for Z, let alone the specialized care his condition requires. Collectively, these exhibits strongly indicate that Heather has suicidal ideation; uses and admits addiction to hard drugs, including methamphetamine and pills; shelters Z from the cold in a car with a missing window; and had Z in such poor state that a social worker was "very concerned" by his outward appearance. Heather is evidently not "merely inconvenienced" by the responsibility of childcare. Her inability to adequately shelter—and seemingly clothe or feed—Z, who also suffers from a serious medical condition, is sufficient evidence for me to find that she is incapacitated for purposes of § 1B1.13(b)(3)(A). *See, e.g., United States v. Morrison*, 501 F. Supp. 3d 957, 959 (D. Nev. 2020) ("The Court is concerned that if not released, Morrison's children, ages fifteen and sixteen, who both have their own health considerations that need attention and ongoing doctors' appointments, will not be cared for. Their current caregiver, Morrison's 60-year-old mother, has spinal stenosis and

---

[6] In his supplement to his reply, Smith states that the last text communication between his father and Heather was on April 16, 2024. ECF No. 108 at 2. It is unclear whether this was the exchange he was referring to, but presumably this exchange occurred no later than that date, because he claims in the supplement that Heather's "phone line has been disconnected." *Id.*

[7] Smith does not claim to be the father of Heather's other child. *See* ECF No. 108 at 2. The findings I make in this order are only in reference to Smith's minor child, Z.

degenerative disc disease and is . . . no longer able to take the children to their respective medical appointments and is limited in her physical ability to take care of them[.]"); *United States v. Kesoyan*, 2020 WL 2039028, at *4 (E.D. Cal. Apr. 28, 2020) (granting compassionate release where the defendant's twenty-four-year old son "ha[d] cerebral palsy," was "developmentally disabled," "need[ed] assistance with daily activities," and was under the care of other family members who each had medical afflictions and couldn't provide proper care).

As previously discussed, Smith need not prove that he is the only or best available caretaker for Z. However, I note that although Heather retains sole physical custody of Z, ECF No. 99 at 19, 25, in contrast to the government's assertion that Smith has no proof that he has played a significant role in Z's life, the presentence report details that "Smith is able to speak with [Z] daily. Father and son share a good relationship. Prior to incarceration, Smith spent his leisure time with [Z][,]" ECF No. 86 at 18.

The court does not take this motion or Smith's request lightly, especially given the nature of his offenses. But because I find that Z's caregiver is incapacitated, Smith has provided the court with an extraordinary and compelling reason for a sentence reduction under § 1B1.13(b)(3).

### 3. *The § 3553(a) factors*

The § 3553(a) factors weigh in favor of Smith's release. Smith was admittedly convicted of a serious crime, pleading guilty to eight counts of Illegal Acquisition of a Firearm in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2), and one count of Engaging in the Business Without a License (Firearms) in violation of 18 U.S.C. §§ 922(a)(1)(A), 923(a) and 924(a)(1)(D). ECF No. 83; ECF No. 94. However, before this conviction, Smith had no prior criminal history. ECF No. 91 at 4. Smith also accepted responsibility for the crime, *Id.* at 7, and has allegedly completed over sixty educational courses and is currently pursuing paralegal studies,[8] ECF No. 99 at 2. The government does not challenge the validity of either these claims in its belated response. *See* ECF No. 104. "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling

---

[8] I note that, despite representing himself pro se, Smith's filings demonstrate a legal knowledge and skill representative of someone with rudimentary legal training.

11

reason." 28 U.S.C. § 994(t). However, I consider this a factor weighing in favor of his sentence reduction in conjunction with my previous finding that he has provided an extraordinary and compelling reason for his compassionate release.

Smith was sentenced to sixty-three months of incarceration,[9] followed by a term of three years of supervised release.[10] J., ECF No. 94 at 2–3. He was arrested October 12, 2021, and has remained in federal custody since that time—a total of thirty-six months. Presentence rep., ECF No. 86 at 2. Smith's current projected release date is either January 30, 2026,[11] or May 15, 2026.[12]

At sentencing, I considered the many factors involved in Smith's case and decided that, despite the nature of the crime, a significant downward variance compared to the guidelines-recommended range was warranted.[13] Smith has served most of his sentence, bettered himself through classes and trainings, and does not appear to have any serious disciplinary record while incarcerated. Given all these considerations, I find that a sentence of forty months reflects the seriousness of his crimes, promotes respect for the law, provides adequate punishment for his crimes, and adequately deters this conduct. I further find that he is no longer a threat or danger to the public and that he has a positive attitude about his parental obligations and the ability and promise to achieve success, responsibility, and happiness in his life and provide the same for his son.

### D. Filings mentioning Z by name

Courts regularly seal filings sua sponte that include a party's minor child's full name to ensure the child's safety. *See, e.g.*, *Sloatman v. Housewright*, 2023 WL 8852375, at *2 (C.D. Cal. Nov. 17, 2023), *report and recommendation adopted*, 2023 WL 8850724 (C.D. Cal. Dec. 18, 2023) ("[T]he Court issued an order sua sponte sealing and striking numerous filings in the case docket that contained

---

[9] Smith was sentenced to sixty-three months per count, to run concurrently, for counts 1 through 8, and sixty months, to run concurrently to all other counts, for count 9. J., ECF No. 94 at 2.
[10] Smith was sentenced to three years of supervised release—following his period of incarceration—per count, to run concurrently. ECF No. 94 at 3.
[11] Kenneth Earl Smith, BOP Inmate Locator, https://www.bop.gov/inmateloc/ (search "69604-509" in "BOP Register Number") (last visited Oct. 16, 2024).
[12] Gov't's suppl. resp., ECF No. 106 at 8.
[13] The PSR included a recommended sentence of eighty-seven months for each of counts 1 through 8, to run concurrently, as well as the same sixty months for count 9, to run concurrently to the others, and three years of supervised release on all counts, to run concurrently. ECF No. 86 at 24.

the full names of Plaintiff's minor children[.]"); *Frye v. Cohen*, 2023 WL 4182162, at *1 n.1 (D. Ariz. June 26, 2023) ("Plaintiff's initially-filed Application is at Docket Entry 2, which the Court ordered be placed under seal because it referred to a minor child by name."); *see also* Fed. R. Civ. P. 5.2(a) ("Unless the court orders otherwise, in an electronic or paper filing with the court that contains . . . the name of an individual known to be a minor, . . . a party or nonparty making the filing may include only . . . the minor's initials[.]"). Because Smith's filings at ECF No. 99, ECF No. 105, and ECF No. 108 all include the name of Smith's son, I order, sua sponte, that they be sealed.

IV.     Conclusion

IT IS THEREFORE ORDERED that Smith's motion for compassionate release [ECF No. 99] is GRANTED. His motion at [ECF No. 107] is DENIED.

IT IS FURTHER ORDERED that the Court reduces Smith's sixty-three-month sentence to forty months, which should make Smith eligible for immediate release.[14]

IT IS FURTHER ORDERED that upon release from imprisonment Smith shall be on supervised release for a term of three years and shall be subject to the conditions of supervision previously imposed by the sentencing Court.

IT IS FURTHER ORDERED that the Clerk of Court is to enter an amended **JUDGMENT** reflecting the modified forty-month sentence, providing that all terms and conditions of Smith's supervised release are to remain the same.

IT IS FURTHER ORDERED that the Clerk of Court is to furnish copies of this order to Kenneth Earl Smith, Jr. and U.S. Probation.

The Clerk of Court is directed to seal the filings at ECF No. 99, ECF No. 105, and ECF No. 108.

Dated: October 22, 2024

_____
Cristina D. Silva
United States District Judge

---

[14] To be clear, the court's intention in modifying his sentence is to allow for his immediate release. To the extent that the court miscalculated his resentencing to achieve that goal, Smith and/or BOP shall immediately file a motion or notice with the court advising of his expected release date for the court's consideration.